UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-01964-MRA-SSC | Date | August 21, 2026 |
| Title | *Hoa Tonthat v. Mark Bowen, et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Melissa H. Kunig | None Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING PETITIONER'S RENEWED APPLICATION FOR TEMPORARY RESTRAINING ORDER [23]**

Before the Court is Petitioner's Renewed Application for Temporary Restraining Order and Preliminary Injunction ("TRO Application"). ECF 23. The Court read and considered all briefing related to the TRO Application and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **DENIES** the TRO Application.

## I. BACKGROUND

Petitioner Hoa Tonthat ("Petitioner" or "Tonthat") is a citizen of Vietnam. ECF 1 ¶ 25. Tonthat's underlying Petition for Habeas Corpus ("Petition") is brought against Respondents Mark Bowen, Warden-Facility Administrator at Adelanto ICE Processing Center, Thomas P. Giles, Director of Los Angeles Field Office, Todd Lyons, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), Markwayne Mullin, Secretary of the U.S. Department of Homeland Security, and Pamela Bondi,[1] Attorney General of the United States, in their official capacities (collectively "Respondents" or the "Government"), alleging unlawful detention under the Fifth Amendment and 8 U.S.C. § 1231(a). ECF 1. Both the Petition and the TRO Application seek immediate release. ECF 1, ECF 23.

While the Petition states that Tonthat arrived in the United States in 1992, the government claims that Petitioner first arrived in 1972. *See* ECF 1 ¶ 25; ECF 26 ¶ 5. Regardless, it is undisputed that Petitioner has a final order of removal designating Vietnam as the country for removal. ECF 26, Ex. B. Petitioner was initially released from immigration custody in or about

[1] At the time of filing, Pamela Bondi was the acting U.S. Attorney General. She has been replaced by Attorney General Todd Blanche.

May of 2002 on an Order of Supervised Release ("OSUP"). ECF 1 ¶ 6; ECF 26 ¶ 14.

Petitioner has a lengthy criminal history beginning as early as 1989 with a conviction for misdemeanor larceny. ECF 9, Ex. B. Petitioner accrued additional arrests and convictions over the ensuing decades, spanning the time both before and after Petitioner's OSUP release. *See id.*, ECF 26 ¶¶ 7-23. Most recently, Petitioner was arrested on March 2, 2026, for possession of a controlled substance and unlawful paraphernalia. ECF 26 ¶ 23. This arrest led to ICE detaining him on the same day. *Id.* ¶ 24, ECF 1 ¶ 2.

As part of his processing into immigration custody on March 2, 2026, Petitioner was given a Notice of Revocation of Release informing him that his supervision had been revoked based on "a determination that . . . there is a significant likelihood of removal in the reasonably foreseeable future." ECF 26, Ex. C. The notice also states that Petitioner "will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation." *Id.* Respondents assert that, on March 10, 2026, an Enforcement and Removal Operations ("ERO") officer attempted to conduct a "travel interview" with Petitioner, which Petitioner refused. ECF 26 ¶ 25. This "travel interview" was ultimately conducted on March 18, 2026. *Id.* ¶ 26.

On March 27, 2026, the government submitted a request for the travel documents required to remove Petitioner to Vietnam. ECF 9 at 6. On April 17, 2026, Petitioner filed the Petition. ECF 1. On April 21, 2026, the Court denied Petitioner's first application for a TRO on the basis that emergency relief was not warranted, given the expedited briefing schedule governing the underlying Petition. ECF 6. On August 13, 2026, the government filed a Notice of Intended Removal, informing the Court that it intended to remove Petitioner from the District in order to effectuate his removal to Vietnam on August 29, 2026. ECF 22. Petitioner is now renewing his TRO Application, arguing that the Notice of Intended Removal creates a threat of imminent harm warranting emergency relief. ECF 23. The government opposes, ECF 24, and several supplemental filings were submitted by both parties, ECF 26, 28, 29, 30.

## II. LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is substantively the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Under *Winter*, a plaintiff seeking a TRO must

establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing Winter, 555 U.S. at 20).

Courts in this circuit also employ "an alternative 'serious questions' standard . . . known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff." *Id.* at 1132.

## III. DISCUSSION

In deciding whether to grant injunctive relief, "[l]ikelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). In his TRO Application, Petitioner argues he is likely to succeed in establishing that his detention on March 2, 2026, was unlawful due to the government's failure to adhere to federal regulations regarding re-detention and revocation of release. ECF 23 at 3-4.

The detention and removal of noncitizens[2] ordered removed is governed by 8 U.S.C. § 1231 ("Section 1231"). Section 1231 states that, once "an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." *Id.* § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Once the removal period passes and the "alien does not leave or is not removed . . . the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General[,]" which include statutorily mandated conditions. *Id.* § 1231(a)(3).

The revocation of release on supervision after the expiration of the removal period—*i.e.*, the revocation of an OSUP, like the one issued to Petitioner—is governed by 8 C.F.R. § 241.13(i). *Tiraturian v. Bondi*, No. 5-25-CV-03239-WLH-DFM, 2025 WL 4061565, at *2 (C.D. Cal. Dec. 8, 2025). Under that regulation, an OSUP may be revoked: (1) if the noncitizen "violates any of

[2] The Court prefers the term noncitizen, but uses the terms noncitizen and alien interchangeably, given the statutory and regulatory language at issue.

the conditions of release," 8 C.F.R. §§ 241.13(i)(1), 241.4(l)(1); or (2) if it is determined "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," *id.* § 241.13(i)(2). Additionally, certain designated officials may revoke an OSUP as an act of discretion. *Id.* § 241.4(l)(2).

The regulations also establish "revocation procedures" that must be followed, including that the noncitizen "will be notified of the reasons for revocation of his or her release" and receive an "initial informal interview promptly" after being detained, to "afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). During such an interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "Together, the statutory and regulatory language sets forth three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a 'prompt' opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official." *Tiraturian*, 2025 WL 4061565, at *2.

Here, the government has filed a Notice of Intended Removal, secured Petitioner's travel documents, and scheduled his flight to Vietnam later this month. Petitioner argues that the government nevertheless violated his due process rights when it detained him without complying with its own regulations applying to an OSUP revocation, and that he should be released from custody as a result. *See* ECF 25 at 4-5.

In support, Petitioner relies on *Pham v. Marin*, a recent decision by the undersigned judge granting a TRO. No. 5:26-CV-00785-MRA-SP, 2026 WL 712946, *5 (C.D. Cal. Mar. 11, 2026). While there are similarities between the two habeas cases, *Pham* is distinguishable in several significant ways. In *Pham*, travel documents had been requested but not obtained, and the government had provided "no update on the status of that request or specific reasons why it expect[ed] documents to be issued in the reasonably foreseeable future." *Id.* at *4. The Court consequently concluded that "[a]t best, the government ha[d] demonstrated a 'mere possibility that removal w[ould] occur,' which [was] insufficient to carry its burden of showing a 'significant likelihood' of removal." *Id.* (citing *Yan-Ling X. v. Lyons*, No. 1:25-CV-01412-KES-CDB, at *4 (HC), 2025 WL 3123793 (E.D. Cal. Nov. 7, 2025)). Here, the government has obtained the travel documents it needs to remove Petitioner and has scheduled his flight to Vietnam later this month, clearly showing not that Petitioner might be removed, but that he will be removed.

*Pham* is also distinguishable on the basis that the Notice of Revocation in that case was

ambiguous and purported to rely on disputed and unsubstantiated criminal history. *See id.* at 5. Here, in contrast, the government has provided documentation to show Petitioner's criminal history, including his recent arrest and other convictions after he was placed on supervised release. *See* ECF 9, Ex. B. Though the underlying Petition states that Petitioner has "not violated the terms of [his] OSUP," ECF 1 ¶ 6, Petitioner does not dispute his criminal history, including his recent arrest, which would appear to have provided the government with an independent basis for revoking Petitioner's OSUP. Thus, for all these reasons, the government has demonstrated that Petitioner's removal is not only likely but certain to occur this month.

In addition, Petitioner argues that his re-detention was procedurally deficient because he was not afforded an informal interview where he was given the opportunity to contest the reasons for revocation. *See id.*, ECF 29. The parties dispute this point. The government asserts that Petitioner was given the opportunity for an "informal interview" on March 10, 2026, which he refused. ECF 26 ¶ 25, ECF 30 at 2. Petitioner argues that the interview offered on March 10 was a "travel interview," which the government has failed to establish would have provided Petitioner with the opportunity to contest the basis for his re-detention. Even if Petitioner could establish that the revocation was procedurally defective as to the notice or interview, the Court does not believe that release would be the appropriate remedy under the present circumstances. *See Pogosyan v. Bondi*, No. 5:25-cv-03121-SRM-AS, 2025 WL 3898485, *8 (C.D. Cal. Dec. 3, 2025) (ordering that an informal interview take place, rather than release, as the appropriate remedy). Petitioner was given notice at the time of his re-detention that his OSUP was being revoked based on the likelihood of removal in the reasonably foreseeable future. The substance of the interview would have focused on whether this significant likelihood of removal existed. The Petition itself addresses this issue, alleging that removal to Vietnam is unlikely based on "longstanding policy." ECF 1 at 7-9. While that may have been the case before, today the government has obtained travel documents from Vietnam to remove Petitioner, and his removal is scheduled to occur in a matter of days. Thus, releasing Petitioner now, based on a procedural violation where Petitioner's removal is not in question, would only serve to undermine the order of removal and go beyond preserving the status quo.

In sum, the Court finds that the government has demonstrated a likelihood of removal in the reasonably foreseeable future. Even if Petitioner could make a showing that his OSUP revocation was procedurally deficient based on any lack of informal interview or insufficient notice, under the narrow circumstances described above, release would not be the appropriate remedy. Thus, because Petitioner has not demonstrated a likelihood of success on the merits, the Court **DENIES** the TRO Application. The Court need not address the other *Winter* factors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-01964-MRA-SSC | Date | August 21, 2026 |
| Title | *Hoa Tonthat v. Mark Bowen, et al.* | | |

## IV. CONCLUSION

For the foregoing reasons, the Renewed Application for Temporary Restraining Order and Preliminary Injunction [23] is **DENIED**.

**IT IS SO ORDERED.**

| | | |
|---|---|---|
| | - : - |
| Initials of Deputy Clerk | mku |